**PACE PROPERTIES, INC.,**
**Plaintiff–Respondent,**

v.

**AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY,**
**Defendant–Appellant.**

**No. 67651.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 6, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 11, 1996.

Application to Transfer Denied
April 23, 1996.

Joseph L. Leritz, Leritz, Plunkert & Bruning, St. Louis, for appellant.

J. William Newbold, Dudley W. Von Holt, Coburn & Croft, St. Louis, for respondent.

DOWD, Judge.

Defendant American Manufacturers Mutual Insurance Company ("Kemper") appeals the judgment for plaintiff Pace Properties, Inc. ("Pace") after a trial by jury. Under an insurance policy issued by Kemper, Pace sought recovery for damage resulting from the collapse of a retaining wall on the north side of the Ballwin Plaza Shopping Center ("Ballwin Plaza"). The jury found for Pace and awarded $220,000 on the insurance policy, $20,000 interest, and an $18,000 vexatious refusal to pay penalty. We affirm in part and reverse and remand in part.

Pace manages and maintains insurance on Ballwin Plaza. Ballwin Plaza has a concrete retaining wall, over 700 feet long and up to 15 feet high in places that separates the commercial tenants from adjoining private property. Pace selected Kemper as its insurer because a standard "ISO" property policy generally excludes coverage of retaining walls, whereas Kemper's policy covered retaining walls "except when [the] loss is from water pressure, ice or impact of watercraft." The insurance with Kemper included an "all risk" property policy and a liability

policy that covers damages to third parties resulting from a covered loss. On February 25, 1991, 150 feet of the retaining wall collapsed. At the time, Pace had fully paid its annual insurance premium for Ballwin Plaza.

Pace repaired and replaced the collapsed wall and made a timely claim for reimbursement on its property and liability policies. On April 17, 1991, Kemper denied Pace's property claim explaining in its letter that "[a]n investigation of the cause of loss determined that the retaining wall collapsed due to soil and water pressure...."

Pace sued on the insurance policy, and the case went to trial. At the close of plaintiff's case, the trial court denied Kemper's motion for directed verdict as to Pace's claim under the property policy and the related claim for vexatious refusal to pay.[1] At the close of all the evidence, Kemper again moved for and was denied a directed verdict. The jury found in favor of Pace, and Kemper moved for judgment notwithstanding the verdict, or in the alternative for a new trial. The trial court denied the motion and entered a judgment for Pace in accordance with the jury verdict. This appeal ensued.

In its first point on appeal, Kemper asserts the trial court erred in denying its motions for directed verdict because the proximate cause of the collapse was not earth pressure but rather the gradual deterioration of the wall itself, which was excluded from coverage under the policy. A denial of a motion for directed verdict is reviewed as a question of law, and we view the evidence in the light most favorable to the non-moving party and determine whether that party has proffered a submissible case. *Fricke v. Valley Production Credit Association,* 721 S.W.2d 747, 752 (Mo.App.1986).

The "all-risk" property policy provided in pertinent part:

A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused

---

1. The trial court sustained Kemper's motion for a directed verdict on the liability policy and on Pace's related vexatious refusal to pay claim.

by or resulting from any Covered Causes of Loss in accordance with the provisions of Section F, Covered Causes of Loss....

\*   \*   \*   \*   \*   \*

2. Property Not Covered

Covered Property *does not* include: ...

h. Fences, pavements, swimming pools and related equipment and *retaining walls when loss is caused by water pressure, ice or impact of watercraft* ; ...

\*   \*   \*   \*   \*   \*

F. COVERED CAUSES OF LOSS

We insure covered property against risks of direct physical loss or damage from external causes ... unless the loss is:

1. Excluded in Section G, Exclusions; or....

\*   \*   \*   \*   \*   \*

G. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded *regardless of any other cause or event that contributes concurrently* or in any sequence to the loss....

2. We will not pay for loss or damage *caused by or resulting from any of the following* : ...

d. (1) Wear and tear;

(2) *Rust, corrosion,* fungus, decay, *deterioration,* hidden or latent defect or any quality in property that cause it to damage or destroy itself;.... (Our emphasis).

▉ The "COVERAGE" section of Kemper's property policy makes clear retaining walls are covered unless the cause of loss was water pressure, ice or impact of watercraft. Section G contains the covered property exclusions. The exclusions are divided into two paragraphs. Paragraph one applies "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Paragraph two states Kemper "...

will not pay for loss or damage caused by or resulting from any of the following: ...."

Kemper argues the rust exclusion in section G paragraph two applies; therefore, the trial court should have granted a directed verdict on that basis. We disagree. Paragraph two omits the "regardless of any other cause" language found in the paragraph one exclusions. The absence of such language indicates the exclusions in paragraph two only apply when they are the sole cause of the loss. It necessarily follows that if a covered cause of loss is *a* cause of loss, a paragraph two exclusion cannot apply. Thus even assuming Kemper is correct in asserting the paragraph two deterioration was a cause of the wall's collapse, Pace would have offered a submissible case if it presented evidence of a covered loss. If so the issue was for the jury to determine, and Kemper was not entitled to a directed verdict based upon the paragraph two exclusions.

▉ At trial, experts testified for both Pace and Kemper regarding the cause of the retaining wall's collapse. Mr. Richard Laughlin, a state-licensed geotechnical engineer specializing in soil mechanics and foundational engineering, testified as an expert for Pace. Mr. Laughlin testified that a combination of earth pressure and internal decay caused the wall to collapse. He testified the weep holes (which are designed to reduce water pressure behind the wall) were functioning properly prior to the accident thus reducing the importance of water pressure as a cause.[2] Further support for Mr. Laughlin's opinion was based on evidence from the National Weather Service that revealed the last significant rainfall prior to the accident was a week earlier, measuring slightly less than a half-inch. Mr. Laughlin lastly testified parts of the wall that did not fall were in need of repair and those portions were replaced during repairs.

From our review of the record, we find Pace adduced sufficient evidence that a covered cause of loss—earth pressure—contributed to the collapse of the retaining wall.

2. Mr. Laughlin testified in a pre-trial deposition that water pressure was one of several contributing causes of the collapse of the wall. However, he modified his opinion at trial after reviewing defendant's expert's deposition as well as a witness' account that the weep holes were working prior to the collapse.

*Winters v. Sears, Roebuck and Co.*, 554 S.W.2d 565, 570 (Mo.App.1977). Mr. Laughlin excluded water pressure as a factor in the collapse and attributed the collapse to earth pressure. Earth pressure was not an excluded cause under the policy. Therefore, the evidence viewed in the light most favorable to Pace reveals a paragraph two exclusion does not apply, and a directed verdict was not proper. Point denied.[3]

In its second and third points, Kemper asserts two arguments regarding Instruction No. 9, patterned after M.A.I. 4.01, given to the jury to assess damages under the policy: 1) the trial court erred by submitting an instruction that did not define "occurrence," a key word; and 2) the trial court erred because M.A.I. 4.02 should be used in a case involving property damage only.

■ Kemper's first argument has not been preserved. Kemper failed to specifically object to the alleged vagueness of "occurrence." "Counsel shall make specific objections ... stating distinctly the matter objected to and the grounds for the objection." Rule 70.03. However, Kemper did preserve its assignment of error regarding the use of M.A.I. 4.02.

■ M.A.I. 4.01 and M.A.I. 4.02 are the only Missouri approved damage instructions. M.A.I. 4.01 should be used when personal and property damage is involved. *Sands v. R.G. McKelvey Bldg. Co.*, 571 S.W.2d 726, 730 (Mo.App.1978). M.A.I. 4.02 should be used for property damage only cases. *Id.; see* Notes on Use, M.A.I. 4.02. Where a

Missouri Approved Instruction is applicable, its use is mandatory and failure to do so is presumed prejudicial. *Jarrell v. Fort Worth Steel & Manufacturing Co.*, 666 S.W.2d 828, 837 (Mo.App.1984).

■ Here, the only damage evidence introduced by either Pace or Kemper was property damage. Although some caselaw indicates M.A.I. 4.01 may be properly given in a breach of contract action involving only property damage (*See Gottlieb v. Hyken*, 448 S.W.2d 617, 621 (Mo.1970); *Stamm v. Reuter*, 432 S.W.2d 784 (Mo.App.1968); *Wilson v. Motors Insurance Corporation*, 349 S.W.2d 250 (Mo.App.1961)), the instructions were given in those cases prior to the effective date of M.A.I. 4.02. Those cases are therefore inapplicable.[4] We hold the trial court erred in giving M.A.I. 4.01 in a breach of contract action involving property damage only, and the cause should be remanded for a new trial on the issue of damages. *Sands*, 571 S.W.2d at 730–32; *Jones v. Columbia Mutual Insurance Company*, 636 S.W.2d 132, 133 (Mo.App.1982).

For its fourth point on appeal, Kemper asserts two related arguments: 1) the trial court erred in allowing Pace to recover the cost of replacement and renovation for the collapsed retaining wall because those issues were not raised by the pleadings and Kemper did not consent to their trial per Rule 55.33(b);[5] and 2) the trial court erred in submitting Instruction No. 7 because it allowed Pace to recover for damages not pled.

---

**3.** In the last sentence to a sub-paragraph, in its first point on appeal, Kemper added what amounts to another point relied on: "The trial court erred in refusing Kemper's Instructions C and D." In the form asserted, such an argument violates Rule 84.04(d). The three parts of a point relied on are "(1) a concise statement of the challenged ruling of the trial court, (2) the rule of law which the court should have applied, and (3) the evidentiary basis upon which the asserted rule is applicable." *Amparan v. Martinez*, 862 S.W.2d 497, 499 (Mo.App.E.D.1993) (Citations omitted). Kemper's assertion is missing parts two and three. Therefore, we decline to review Kemper's contention.

**4.** Pace cites *Morgan v. Wartenbee*, 569 S.W.2d 391, 394–96 (Mo.App.1978), a case subsequent to the passage of M.A.I. 4.02, that approves the use

of M.A.I. 4.01 in a case involving only property damage. However, since *Morgan* did not include an assertion that M.A.I. 4.02 was the proper instruction, it is not authority on the question. *See Sands*, 571 S.W.2d at 731, n. 4.

**5.** Kemper relies on *Duncan v. Townsend*, 325 S.W.2d 67 (Mo.App.1959) and *Green Acres Enterprises, Inc. v. Nitsche*, 636 S.W.2d 149 (Mo.App. 1982). However, neither case supports Kemper's position. *Duncan* was handed down prior to the passage of Rule 55.33(b); and although *Green Acres Enterprises, Inc.* does address Rule 55.33(b), the court did not review the trial court's analysis of any possible prejudice upon the defendant by allowing the pleadings to be amended. *See Green Acres Enterprises, Inc.*, 636 S.W.2d at 155.

888

A trial court may freely allow the pleadings to be amended to conform to the evidence, without the consent of the non-moving party, if "... the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would cause prejudice in maintaining the action or defense upon the merits." Rule 55.33(b). A trial court should liberally permit amendments of pleadings to conform to the evidence presented. *St. Louis County v. Taggert*, 809 S.W.2d 476, 478 (Mo.App.1991). Trial courts are afforded great discretion concerning this issue, and we will not disturb the trial court's decision "on appeal unless there is an obvious and palpable abuse of discretion." *Osborn v. Boatmen's National Bank of St. Louis*, 811 S.W.2d 431, 437 (Mo.App.1991); accord *Schaffer v. Haynes*, 847 S.W.2d 814, 818 (Mo. App.E.D.1992).

Although the trial court permitted the pleadings to be amended to conform to the evidence, we find no abuse of discretion. During discovery, Kemper requested a statement from Pace listing the amounts claimed for "clean up, repair or rebuilding of the retaining wall." Furthermore, the cross-examination of Pace's executive officer shows Kemper's counsel knew Pace was seeking damages for the repair, replacement, and renovation of the fallen retaining wall. We can find no prejudice on this record, and Kemper has failed to demonstrate how it was prejudiced. The court permissibly allowed the pleadings to reflect the evidence on the cost of renovating and replacing the fallen retaining wall. Point denied.

For its last point on appeal, Kemper asserts the trial court erred by submitting to the jury the issue of vexatious refusal to pay pursuant to § 375.420, RSMo 1994. In determining whether an instruction should have been given or withheld on the evidence presented, we view all the evidence and inferences in the light most favorable to the party offering the instruction and disregard any evidence to the contrary. *Wilkes v. Group Underwriters Mutual*, 715 S.W.2d 308, 310 (Mo.App.1986). To support submission of the vexatious refusal instruction, an insured must provide evidence the insurer's refusal to pay the loss—at the time it was asked to pay—was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person. *Groves v. State Farm Mutual Automobile Insurance Company*, 540 S.W.2d 39, 42[1] (Mo. banc 1976). The existence of a litigable issue does not preclude a vexatious penalty where evidence shows the insurer was vexatious and recalcitrant. *DeWitt v. American Family Mutual Insurance Company*, 667 S.W.2d 700, 710 (Mo. banc 1984). This language from *DeWitt* has been characterized as relaxing the burden necessary to support an award of vexatiousness. *Russell v. Farmers & Merchants Insurance Company*, 834 S.W.2d 209, 221 (Mo.App.S.D.1992) (citing *Allen v. State Farm Mutual Automobile Insurance Company*, 753 S.W.2d 616, 620 (Mo. App.1988); *Hester v. American Family Mutual Insurance Company*, 733 S.W.2d 1, 2[3] (Mo.App.1987)). Where there is evidence an insurer unreasonably relied on the results of its own investigation, the question is for the jury. *Russell*, 834 S.W.2d at 221; *Allen*, 753 S.W.2d at 621[4].

Here, Kemper defended its refusal to pay based on the investigation by its expert, Dr. Yarbrough. However, there was sufficient evidence Kemper's reliance on Dr. Yarbrough's investigation was unreasonable. Dr. Yarbrough did not inspect the wall until a month after the accident. He could only inspect one of the weep holes in the fallen sections of the wall because the rest were covered with debris. Further, evidence from the National Weather Service revealed the last rainfall prior to the accident was one week earlier and only amounted to one-half inch. Lastly, Dr. Yarbrough testified by deposition water pressure caused the collapse of the wall because "there's always water pressure behind a wall in the spring time in the St. Louis metropolitan area." Dr. Yarbrough's opinion may be perceived as based upon a questionable assumption and an inadequate observation of the fallen wall. Thus, the trial court did not err in submitting the vexatious refusal to pay instruction to the jury. Point denied.

The judgment as to liability on the property policy, and as to the vexatious refusal to

pay penalty is affirmed; however, the judgment as to damages is reversed, and the cause is remanded for a new trial solely on the amount of damages.

CRAHAN, P.J., and CRANDALL, J., concur.